IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBIN COSTENBADER-JACOBSON, : <br> Plaintiff, : <br> : <br> v. : <br> : <br> COMMONWEALTH OF PENNSYLVANIA, : <br> DEPARTMENT OF REVENUE, : <br> PENNSYLVANIA LOTTERY, ROBERT A. : <br> JUDGE, SR., and DANIEL L. COOK, : <br> Defendants. : | Civil Action No. 1:CV 00-1269 <br><br> (Judge Kane) |

**MEMORANDUM AND ORDER**

Plaintiff, formerly Assistant Director of the Pennsylvania Lottery ("Lottery"), alleges that during the course of her employment she was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleges that she was ultimately discharged in retaliation for the claim of discrimination she filed with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission, and that the discharge thus violated Title VII and the First Amendment to the United States Constitution.[1] The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper. Defendants have filed a motion for summary judgment, which has been fully briefed and is ripe for disposition. For the reasons discussed below, the motion will be granted in part and denied in part.

---

[1] In her complaint, Plaintiff also alleged that Defendants violated the Government Employee Rights Act (GERA), 2 U.S.C. § 1202(a)(1). However, in her brief in opposition to the motion for summary judgment, Plaintiff withdrew these counts, and the Court therefore will not address Counts III and IV of the complaint.

I.  **Background**

Plaintiff Robin Constenbader-Jacobson was appointed Deputy Executive Director of the Pennsylvania Lottery by Governor Tom Ridge on the recommendation of Secretary of Revenue Robert A. Judge. At the time she was appointed, Plaintiff understood that the position was considered a political appointment, and that she was to serve at the pleasure of the Secretary of Revenue. In addition, Plaintiff knew that the Senior Management Service position she accepted was not subject to a collective bargaining agreement, and was not covered by unemployment compensation. Costenbader-Jacobson began working in her position at the Lottery on December 1, 1997. She worked closely with and was supervised by her predecessor, Dan Cook, who received a promotion and, at all times relevant to this dispute, held the position of Executive Director of the Pennsylvania Lottery.

Plaintiff's complaint details a number of incidents that allegedly occurred during the course of her employment with the Lottery. First, Plaintiff claims that in a private meeting during her first week at the lottery, Cook discussed a male employee with a lump in the groin area and told Plaintiff it was her job to find out what the lump was. Second, Plaintiff alleges that at various times Cook told her a variety of sexually-oriented jokes including a joke about a male employee on the sexually stimulating drug Viagra, a joke regarding female genitalia, and sexual jokes related to reports of the Monica Lewinsky affair. Third, when Plaintiff became involved with a project at the Philadelphia Lottery office, Cook allegedly told a Philadelphia Lottery employee "[not to] worry about Costenbader-Jacobson because she just sees things through a woman's eyes." Fourth, in the same context, Plaintiff claims that Cook told another Philadelphia Lottery employee that Plaintiff was going to "stir things up" in Philadelphia and that she could go "f--- herself."

2

In addition to the above, Plaintiff alleges that Cook discriminated against her because of her sex when he failed to delegate responsibilities to her, excluded her from meetings, failed to tell her when meetings were being held, and did not ask her to participate in meetings. Further, Plaintiff alleges that Cook was inaccessible to her in that he canceled numerous meetings she attempted to have with him in order to discuss Lottery-related matters. This state of affairs continued until Plaintiff's termination.

Plaintiff first discussed the situation with Secretary Judge at a March 5, 1998 meeting that also included Cook and Deputy Secretary of Revenue Barry Drew. During the meeting, Secretary Judge mediated the dispute between Costenbader-Jacobson and Cook. Secretary Judge reprimanded Cook with respect to the jokes and emphasized that it was essential for Cook and Plaintiff to work together. He also told Plaintiff that meetings were regularly scheduled and that she could and should attend them without a formal invitation.

The working relationship between Plaintiff and Cook did not improve, and was the subject of additional meetings with Secretary Judge. However, despite Secretary Judge's involvement, the situation continued to deteriorate. In October 1998, Plaintiff filed a formal complaint of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). The complaint was served on the Department of Revenue on or about December 10, 1998.

In the winter of 1998-1999, as the working relationship between Cook and Costenbader-Jacobson failed to improve, Secretary Judge decided to terminate either Cook or Costenbader-Jacobson, or both of them, in order to improve Lottery operations. Secretary Judge retained Cook, and discharged Plaintiff on February 11, 1999. The stated reasons for her termination included inadequate knowledge of the Lottery, frequent extended absences from Lottery

3

headquarters, lack of professional conduct including displays of temper, and an unwillingness to work with Cook. Cook had no involvement in the decision to terminate Plaintiff, and was not informed of the decision until after it had occurred.

## II. Discussion

### A. *Standard of Review*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). The court must view all facts and inferences in the light most favorable to the nonmoving party. See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Williams v. Perry, 907 F. Supp. 838, 842 (M.D. Pa. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in her complaint; instead, she must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

### B. *Title VII*

Counts I and II of Plaintiff's complaint allege that Plaintiff was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "employee" broadly as "an individual employed by an employer" but exempts several groups from its protection including:

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision . . . .

42 U.S.C. § 2000e(f).

Defendants assert that Plaintiff was an appointee on the policymaking level, and thus exempt from the protections of Title VII. Plaintiff's status as an employee is a question of federal law, and the exemption is to be narrowly construed. E.E.O.C. v. Reno, 758 F.2d 581, 584 (11th Cir. 1985) (citation omitted). However, "[s]tate law is relevant insofar as it describes the Plaintiff's position, including [her] duties and the way [she] is hired, supervised and fired." Calderon v. Martin County, 639 F.2d 271, 273 (5th Cir. Unit B 1981). See also Lee v. Wojnaroski, 751 F. Supp. 58, 60 (W.D. Pa. 1990) (examining statutory powers of office to determine whether the post falls into the policymaking level for Title VII purposes).

Courts have considered a number of factors when determining whether a given position is subject to the policymaking exception to the Title VII or ADEA definition of employee.[2] First among these factors is whether the appointee has discretionary rather then solely administrative powers. Stillians v. State of Iowa, 843 F.2d 276, 278 (8th Cir. 1988), abrogated on other grounds, Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991); E.E.O.C. v. Board of Trustees of Wayne County Cmty. Coll., 723 F.2d 509, 511 (6th Cir. 1983). Second, courts look to whether the appointee serves at the pleasure of the appointing authority. Stillians at 278; E.E.O.C. v. Reno, 758 F.2d at 584. A third factor for consideration is whether the appointee has "meaningful input into governmental decision making on issues where there is room for principled disagreement on goals or their implementation," or, put another way, whether the appointee formulates policy. Americanos v. Carter, 74 F.3d 138, 141 (7th Cir. 1996); Stillians, 843 F.2d at 278. Fourth, a court might determine whether the appointee is empowered to act and speak on behalf of a policymaker, particularly an elected official. Gordon v. County of Rockland, 110 F.3d 886, 890 (2d Cir. 1997); Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir. 1994). Final factors for consideration are whether the appointee is exempt form civil service protection, controls other employees, and has some technical competence or expertise. Vezzetti, 22 F.3d at 486.

It is uncontested that Plaintiff sought, and obtained, a senior management position with the Lottery, and that she was a political appointee of the Governor, serving at the pleasure of the Secretary of Revenue. Some of the responsibilities that Costenbader-Jacobson undertook as

---

[2]Because Title VII and the ADEA use the same definition of employee, cases discussing who is an "appointee on the policymaking level" under both statutes apply here. See 29 U.S.C. § 630(f) (ADEA definition of employee).

Deputy Executive Director included attending events on behalf of the Lottery, carrying out the duties of Executive Director Cook when he was out of the office, and speaking on behalf of the policymaker, Governor Ridge. Further, she met regularly with Secretary Judge to discuss various Lottery matters. In addition, there is record evidence of one specific example of how Plaintiff's discretionary authority was applied on the job, as Plaintiff made significant changes to the Lottery's advertising campaign on her own initiative. Finally, the Deputy Executive Director position was exempt from civil service protection, and Plaintiff supervised other employees.

In support of her position that she was not an employee at the policymaking level, Plaintiff cites Gomez v. City of Eagle Pass, 91 F. Supp. 2d 1000 (W.D. Tex. 2000) and Brown v. Polk County Iowa, 811 F. Supp. 432 (S.D. Iowa 1992). Neither of these cases is binding on this Court. However, both merit mention here. The court in Gomez upheld a jury verdict in favor of the plaintiff, who had been hired by the city council as city manager. Gomez's responsibilities involved administering the policies developed by the city council. Gomez, 91 F. Supp. 2d at 1004. Although the city manager had the authority to hire and fire city employees, even those decisions were "so tightly circumscribed by local custom, city ordinances, state statutes, and the [City] Charter," that the court considered them purely administrative functions. Id. at 1005. In Brown, the plaintiff supervised approximately 50 employees, and oversaw the operations of his department. 811 F. Supp. at 434. Brown did not have the ultimate authority on policy decisions; instead such decisions were in the sole purview of the city council. Id.

Costenbader-Jacobson's function at the Lottery differs markedly from the ministerial functions of the plaintiffs in Gomez and Brown. By the nature of her position, Plaintiff had genuine discretionary and policymaking powers. Whether she exercised them or not, these powers went hand in hand with the position to which she was appointed. In addition to her own

7

duties, Plaintiff was responsible for performing the Executive Director's responsibilities in his absence.

It is noteworthy that Plaintiff's position was classified, along with cabinet positions and deputy secretary positions, by the Executive Board as a "Senior Management Service" position. Senior Management Service positions, by definition, have broad policy participation and management responsibility. Management Directive 505.7 Amended Feb. 24, 1998 § 10.1. Criteria considered when classifying a position as Senior Management Service include:

(1) Whether the position description reflects a role in policy formulation and participation in policy decision-making.
(2) Whether the pay range reflects the policy responsibilities of the position.
(3) Whether the lines of authority and reporting sequence stemming from the position reflect policy responsibilities of the position.
(4) The degree of impact the program of which the position is a part has on the agency or the Commonwealth.
(5) The degree of administrative discretion the position exercises in carrying out overall departmental policy and in formulating and approving policy.
(6) Whether the responsiveness and accountability of the position is paramount to achievement of an agency head's goals and objectives.

Id. at § 10.3. Further, Senior Management Service employees serve at the pleasure of the agency head. Id. at § 10.5. The Executive Board's determination that Plaintiff's position meets the criteria of Senior Management Service jobs is not binding on this Court. However, the Executive Board criteria for determining Senior Management Service positions and the criteria for Title VII policymaking positions are strikingly similar, making the Executive Board's analysis persuasive. Upon examining the Executive Board's analysis together with the undisputed facts of this case, the Court must conclude that Plaintiff's position as Deputy Director of the Lottery was a policymaking position, and that Plaintiff therefore is excluded from the definition of employee under Title VII.

8

There is no genuine issue of material fact that precludes entry of summary judgment on Plaintiff's Title VII claim. Plaintiff was an appointee with policymaking authority. Thus, she is exempt from the definition of employee in Title VII. Therefore, the Court will grant summary judgment in favor of Defendants on Counts I and II of Plaintiff's complaint.

C.   *First Amendment*

Next, Plaintiff brings a charge pursuant to § 1983 that her First Amendment rights were violated when she was discharged from her position at the Lottery. Plaintiff claims that she was fired in retaliation for the complaints she made to Secretary Judge and to the PHRC and the EEOC of sex discrimination and harassment. The Court first must determine whether the complaints at issue constitute speech protected by the First Amendment, second, whether Plaintiff's reports of sexual harassment and discrimination were a motivating factor in the decision to terminate her, and finally, whether Plaintiff would have been terminated absent her reports. Azzaro v. County of Allegheny, 110 F. 3d 968, 975 (3d Cir. 1997).

The first issue for the Court to determine, whether Plaintiff's complaints of sexual harassment and discrimination to Secretary Judge, the PHRC and the EEOC are protected by the First Amendment, is an issue of law. Azzaro, 110 F.3d at 975; Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir. 1995). In order for a public employee's expressive conduct to be protected by the First Amendment, the conduct must first address a matter of public concern, to be determined by the "content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983); Azzaro, 110 F.3d at 976. Second, "the value of that expression must outweigh 'the government's interest in the effective and efficient fulfillment of its responsibilities to the public.'" Azzaro, 110 F.3d at 976 (quoting Connick, 461 U.S. at 150).

9

Speech is considered to be on a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993). However, speech by public employees is not considered to be on a matter of public concern when it is "upon matters only of personal interest." Czurlanis v. Albanese, 721 F.2d 98, 103 (3d Cir. 1983) (quoting Connick, 461 U.S. at 147). Generally, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." Swineford at 1271. See Connick, 461 U.S. at 146 (holding that survey questions concerning internal office grievances handed out to coworkers is not of public concern).

Courts have found various forms of speech to be of public concern, including a state college professor's legislative testimony regarding the status of the college, Perry, 408 U.S. at 595; a memorandum on school dress codes passed to a radio station by a teacher, Mt. Healthy, 429 U.S. at 282; complaints about school board policies and practices, Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 413 (1979); a letter to the editor from a public school teacher criticizing the Board of Education's proposals for school financing, Pickering, 391 U.S. at 146; a civil service employee's criticism of county prosecutor's reorganization and promotion plan, Zamboni v. Stamler, 847 F.2d 73, 77 (3d Cir. 1988); and a state police employee communication to a reporter alleging racial harassment, Rode v. Dellarciprete, 845 F.2d 1195, 1201 (3d Cir. 1988). See generally Swineford v. Snyder County Pa., 15 F.3d 1258, 1271 (3d Cir. 1994) (collecting cases). Finally, the Third Circuit has held that a public employee's allegations of sexual harassment reported to her superior is speech on a matter of public concern. Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997).

In Azzaro, a public employee was at a meeting she had arranged with a male coworker for the purposes of smoothing out a disagreement her husband, also a public employee, had with that coworker. During the meeting, the coworker pulled Azzaro's blouse out of her slacks, unzipped his pants, and put his hand inside the zipper. Id. at 970. The opinion, in a footnote, clarifies that the Third Circuit was not holding that all reports of sexual harassment by public employees are per se matters of public concern. Id. at 978 fn. 4. Judge Becker, in a concurring opinion, lists some situations where such speech would not be considered matters of public concern, and where summary judgment for defendants would be appropriate:

> This will include cases where the offender is a non-supervisory co-worker and the incident is more than "isolated," though neither egregious nor repeated with great frequency; where the incident is not known to the "powers that be"; where, even if a supervisor is involved, the incident is minor or questionable; where the motive or credibility of the complainant is significantly in doubt; or where a combination of these factors is at work.

Azzaro, 110 F.3d 968, 981 (J. Becker, concurring). These factors do not apply here. Plaintiff complained of continuing discrimination at the hand of her direct supervisor, a public official serving as Director of a highly advertised statewide lottery program. Plaintiff further alleges that the Secretary of the Department of Revenue himself was aware of the situation, failed to correct it, and instead, fired Plaintiff in retaliation for her complaints of discrimination. It is thus clear that Costenbader-Jacobson's speech touched on matters of public concern.

The Court next turns to balancing Costenbader-Jacobson's interest in the speech (and the public interest in her ability to assert the speech unfettered by fear of retribution) with the Commonwealth's interest in minimizing interruption in the workplace. The state as an employer has an interest in maintaining an efficient workplace. Disruption occurs when Plaintiff's actions impair: discipline by superiors; coworker relationships; Plaintiff's working relationship with

11

others; Plaintiff's performance; and the employer's normal operations. See Swineford, 15 F.3d at 1272. There can be no question that some degree of disruption would occur where a high ranking official such as Plaintiff complains of sexual harassment and discrimination by a superior. The question is whether the interest in the government in being free from this disruption outweighs Plaintiff's right to her speech in the matter.

Defendants cite a Middle District of Pennsylvania case where this balancing was resolved in favor of the government. Poteat v. Harrisburg Sch. Dist., 33 F. Supp. 2d 384 (M.D. Pa. 1999). In Poteat, the court held that a policymaker's public speech opposing policies of the school board was not protected by the First Amendment because the Board's interests outweighed the interests of the policymaker. Id. at 395-96. The policymaker's high-level position, and the Board's need to have a policymaker who agrees with the Board's policy are factors that weighed heavily in this decision. The present case, however, does not involve a public dispute regarding a department's policy. Instead, Plaintiff alleges that a high-ranking official was discriminating against her because of her sex, and that both the official and a Secretary in the Governor's cabinet retaliated against her after she complained about the discrimination, by continuing the discrimination and by terminating her employment. Even taking into account the disruption that would necessarily occur in the workplace when a Deputy Executive Director accuses the Executive Director of the Lottery of sex discrimination, the Court cannot find that the Government's interests outweigh the Plaintiff's interests here. Plaintiff has a strong interest in working in an environment free from discrimination, and the public has an interest in permitting the exposure of such discrimination when it occurs in a state office. Because this Court finds that the balancing of the interests weighs in favor of the Plaintiff, the Court finds as a matter of law that Plaintiff's speech was protected by the First Amendment.

There remains a genuine dispute of facts regarding whether Plaintiff's speech was a motivating factor in the decision to terminate her employment, and whether Plaintiff would have been terminated in the absence of her speech. Such issues are for a jury to decide and preclude entry of summary judgment.

### D.   Equal Protection

Finally, Plaintiff asserts that Defendants violated her equal protection rights. Discrimination in employment based on sex or other protected characteristic can constitute a violation of equal protection. Davis v. Passman, 442 U.S. 228, 234-35 (1979); Andrews v. City of Philadelphia, 895 F2d 1469, 1479 (3d Cir. 1990). To prevail, Plaintiff must first establish a prima facie case by showing that (1) she is in a protected class; (2) she suffered an adverse employment action; and (3) non-members of the protected class were treated more favorably. Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997).

As a woman, Plaintiff is in a protected class. Secretary Judge's discharge of Plaintiff was an adverse employment action, as was the allegedly pervasive harassment by Cook, including Cook's failure to include Costenbader-Jacobson in meetings and other actions he allegedly took to subvert her authority and remove her ability to perform her duties. Further, it is disputed whether men were treated better than women by Cook. Finally, when firing Costenbader-Jacobson rather than Cook, Secretary Judge chose to fire a woman instead of a man. This is sufficient to establish a prima facie case.

Having established a prima facie case, there is a presumption of discriminatory intent by the employer, which the employer may refute by proffering a legitimate, nondiscriminatory reason for its actions. Stewart, 120 F.3d at 432. Defendants assert that Cook's treatment of Costenbader-Jacobson was not discriminatory, as he treated male employees equally poorly.

13

These are issues of fact for a jury to determine. Similarly, Defendants' assertion that Secretary Judge fired Costenbader-Jacobson in order to maintain harmony among his high-level employees, and selected Cook to remain at the Lottery because he had more experience may be refuted by Plaintiff at trial, should the jury believe her version of events, that the Lottery was a "good-old-boys-club" and that the men stuck together. See, e.g., depo. of Sally Danyluk. It is possible that Plaintiff may be able to establish that Secretary Judge failed to stop Cook's harassment and discriminatory actions towards Plaintiff, and in the end picked the harasser to remain at the Lottery, ostensibly in the interest of staff harmony. As there remain genuine issues of fact for trial, the Court will deny Defendant's motion for summary judgment on Count VI of the complaint.

### E.    *Qualified Immunity*

Finally, Defendants assert the defense of qualified immunity. Government officials enjoy qualified immunity from suit under § 1983 when their conduct does not violate clearly established statutory and constitutional rights, the existence of which a reasonable person would have known. Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818) (1982)). The Third Circuit has articulated a three part test to use in determining whether Defendants are entitled to qualified immunity:

> (1) whether the plaintiff[] alleged a violation of [her] constitutional rights; (2) whether the right alleged to have been violated was clearly established at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiff['s] rights.

Rouse v. Plantier, 182 F.3d 192, 196-97 (3d Cir. 1999). Plaintiff has alleged constitutional violations. The law is clearly established that a public employee cannot be subjected to adverse employment action in retaliation for engaging in protected First Amendment activity. See

Bennis v. Gable, 823 F.2d 723, 733 (3d Cir. 1987). It is similarly well established that sex discrimination may violate equal protection guaranteed by the Constitution. Davis v. Passman, 442 U.S. 228 (1979).

Normally, a court should make the determination required by the third prong of the test articulated in Rouse - whether a reasonable official knew or should have known that the alleged action violated the Plaintiff's rights. Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997). However, a court cannot make this legal determination where critical facts that underly the dispute remain at issue. Karnes v. Strutiski, 62 F.3d 485, 492 (3d Cir. 1995). Here, the very nature of the Defendants' actions is disputed. Absent a factual determination of why Plaintiff was terminated by Defendants, this Court cannot determine whether Defendants' conduct was objectively reasonable. The factual determination regarding the reasons for Plaintiff's termination, and hence whether Plaintiff's constitutional rights were violated, is the central issue in this dispute, and one for a jury to decide. Therefore, the Court will deny Defendants' motion for summary judgment on qualified immunity grounds.

### III.   Order

AND NOW, therefore, **IT IS ORDERED THAT** Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part, as follows:

1. Summary judgment is **GRANTED** for the Defendants and against Plaintiff on Counts I and II of the complaint;

2. Counts III and IV of the complaint are deemed **WITHDRAWN**;

3. Summary judgment is **DENIED** with respect to Counts V and VI of the complaint;

4. The Clerk of Court shall withhold entry of judgment pending the conclusion of this case;

5. A scheduling order shall issue forthwith.

_____
Yvette Kane
United States District Judge

Dated: June 4, 2002.