**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBIN COSTENBADER-JACOBSON,                    :
                                               :
                **Plaintiff**                   :
                                               :
    **v.**                                    :    No. CV-00-1269
                                               :
COMMONWEALTH OF PENNSYLVANIA,                  :    (Judge Kane)
DEPARTMENT OF REVENUE,                         :
PENNSYLVANIA LOTTERY;                          :
ROBERT A. JUDGE, SR.;                          :
DANIEL L. COOK,                                :
                                               :
                **Defendants**

**FILED
HARRISBURG, PA**

**SEP 1 8 2002**

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## DEFENDANTS' PRETRIAL MEMORANDUM

**A.    STATEMENT OF FEDERAL COURT JURISDICTION**

      Plaintiff invokes the jurisdiction of this Court pursuant to the Civil Rights

Act of 1871, 42 U.S.C. §1983, and Section 1343 of the Judicial Code, 28 U.S.C.

§1343.

**B.    SUMMARY STATEMENT OF FACTS AND
       CONTENTIONS AS TO LIABILITY**

      Costenbader-Jacobson was hired in December 1997 as a political appointee

by the Ridge administration as the Deputy Executive Director of the Pennsylvania

Lottery, under the Department of Revenue.  Conflicts existed between

Costenbader-Jacobson and Lottery Executive Director Cook which continually were the source of operational disruption within the Lottery. Despite many attempts to resolve the conflicts and Costenbader-Jacobson's complaint to the Pennsylvania Human Relations Commission about Cook, Department of Revenue Secretary Judge determined that the termination of one or both individuals was necessary to attempt to gain operational stability. Accordingly, Secretary Judge terminated Costenbader-Jacobson in February 1999, believing he could not practically remove both high-ranking individuals at the same time, and retained Cook who had more experience with the Lottery at that point.

Costenbader-Jacobson asserts that the actions of Judge and Cook violated her right to equal protection of the laws under the Fourteenth Amendment and was in retaliation for her complaints about Cook in violation of her First Amendment rights. She seeks monetary damages for the alleged violations. Defendants contend she is not entitled to any relief. In fact, Costenbader-Jacobson stipulated to liability against her in a separate proceedings before the State Ethics Commission for financial improprieties while employed by the Lottery. She would have been fired regardless of any reporting regarding Cook or the fact she is a woman.

## C. STATEMENT OF UNDISPUTED FACTS

See Attachment A.

## D. DESCRIPTION OF DAMAGES

Not applicable to defendants.  Defendants do not believe Plaintiff is entitled to any damages.

## E. NAMES AND ADDRESSES OF WITNESSES

See Attachment B.

## F. SUMMARY OF EXPERT TESTIMONY

None contemplated

## G. COMMENTS ABOUT PLEADINGS AND DISCOVERY

None

## H. SUMMARY OF LEGAL ISSUES

I.      Whether Costenbader-Jacobson was terminated from her employment in retaliation for reporting alleged improper conduct of Cook in violation of the First Amendment? Billet v. Cigna Corp., 940 F.2d 812 (3d Cir. 1991); Quiroga v. Hasbro, Inc., 934 F.2d 497 (3d Cir. 1991); Burous v. United Telephone Co. Of Kansas, Inc., 683 F.2d 339 (10th Cir. 1982).

II.     Whether Costenbader-Jabcobson suffered an "adverse employment action" as a result of Cook's actions.  Burlington Industries v. Ellerth, 118 S.Ct. 2257, 2268-2269 (1998);  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997); Southard v. Texas Bd. Of Crim. Justice, 114 F.3d 539, 555 (5th Cir. 1997); McDonnell v. Cisneros, 84 F.3d 256, 258 (7th Cir. 1996); Crady v. Liberty National Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993); McLaughlin v. Commonwealth, 1999 WL 58658 (E.D. Pa. 1999).

III.     Whether Costenbader-Jacobson was denied equal protection of the law by either Cook or Judge?  Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3rd Cir. 1997) ; Schroeder v. Hamilton School District, 282 F.3d 946, 951 (7th Cir. 2002); Billet v. Cigna Corp., 940 F.2d 812 (3d Cir. 1991).

IV.     Whether defendants would have taken the same action to terminate Costenbader-Jacobson's employment despite her speech or without regard to her sex?  Texas v. Lesage, 120 S.Ct. 467 (1999);  Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 272, 287 (1977); Robertson v. Fiore, 62 F.3d 596, 599 (3d Cir. 1995).

V.     Whether the defendants are entitled to qualified immunity under the circumstances of this action? Anderson v. Creighton, 483 U.S. at 641; Malley v. Briggs, 475 U.S. 335, 341 (1986); Butz v. Economu, 438 U.S. 478 (1978); Hobson v. Wilson, 737 F.2d 1, 26 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084.

## I. STIPULATIONS DESIRED

That photocopies of exhibits be admissible instead of original documents.

## J. ESTIMATED NUMBER OF TRIAL DAYS

Five days

## K. OTHER PERTINENT MATTERS

None identified

## L. SCHEDULE OF EXHIBITS

Attachment C

## M. SPECIAL VERDICT QUESTIONS

Attached  D

## N. LOCAL RULE 16.2 CERTIFICATION

Defendants counsel hereby certifies that the appropriate person with settlement authority has been notified of the requirements and possible sanctions under Local Rule 16.2.

**O. LOCAL RULE 30.10**

Not applicable


**P. NON-JURY TRIALS**

Not applicable


Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**

By: _R. Douglas Sherman_ _____

**R. DOUGLAS SHERMAN**
**Senior Deputy Attorney General**
**Attorney I.D. No. 50092**

**SARAH C. YERGER**
**Deputy Attorney General**

**SUSAN J. FORNEY**
**Chief Deputy Attorney General**
**Chief, Litigation Section**

**Counsel for Defendants**


**Office of Attorney General**
**15th Floor,  Litigation Section**
**Harrisburg, PA 17120**
**(717) 787-1179**

**Dated: September 18, 2002**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBIN COSTENBADER-JACOBSON,    :
    :
       **Plaintiff**    :
    :
       v.    : No. CV-00-1269
    :
COMMONWEALTH OF PENNSYLVANIA,    : (Judge Kane)
DEPARTMENT OF REVENUE,    :
PENNSYLVANIA LOTTERY;    :
ROBERT A. JUDGE, SR.;    :
DANIEL L. COOK,    :
    :
       **Defendants**

### CERTIFICATE OF SERVICE

I, **R. DOUGLAS SHERMAN**, Senior Deputy Attorney General for

the Commonwealth of Pennsylvania, hereby certify that on September 18, 2002, I

caused to be served a copy of the foregoing document entitled **Defendants'**

**Pretrial Memorandum,** by depositing same in the United States Mail, first class,

postage prepaid, in Harrisburg, Pennsylvania, upon the following:

Andrew N. Howe, Esquire
Hartman, Hartman, Howe & Allerton, P.C.
2901 St. Lawrence Avenue
Reading, PA 19606

 

**R. DOUGLAS SHERMAN**
**Senior Deputy Attorney General**

*A*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBIN COSTENBADER-JACOBSON,    :
                                    :

          **Plaintiff**    :

                                    :

     **v.**    :    No. CV-00-1269

                                    :

**COMMONWEALTH OF PENNSYLVANIA,** :    (Judge Kane)
**DEPARTMENT OF REVENUE,**    :
**PENNSYLVANIA LOTTERY;**    :
**ROBERT A. JUDGE, SR.;**    :
**DANIEL L. COOK,**    :

                                    :

        **Defendants**    :

## JOINT UNDISPUTED FACTS

The parties hereby agree that the following facts are not genuinely in dispute:

1.    Robert Judge was Secretary of Revenue for the Commonwealth of Pennsylvania from February 1995 until October 2, 2000.

2.    Barry Drew has been the Deputy Secretary of the Pennsylvania Department of Revenue since 1995.  In that capacity he reports to the Secretary and oversees the administrative bureaus including the Personnel Division and Office of Equal Employment Opportunity.

3.    Judge's position as Secretary was to oversee the collection of 23 taxes throughout the Commonwealth and to oversee the Pennsylvania Lottery.

4.    The Pennsylvania Lottery is a unique business of the government in terms of the government marketing and selling gambling to consumers.

5.   The Executive Director of the Pennsylvania Lottery directly reported to the Secretary of Revenue.   The Deputy Executive Director Reported directly to the Executive Director.

6.   Dan Cook began his position as Deputy Executive Director in April 1995 as a political appointment.

7.   In that position, Cook's duties were those as assigned by the Executive Director.   Cook was told that there would be significant procurement activities in the Lottery involving an 18 million dollar advertising budget, an instant ticket contract, and an online gaming contract for daily numbers games.

8.   The contracts for all three areas were awarded during Cook's tenure as Deputy Director to Tierney and Partners (advertising), Scientific Games (instant tickets) and AWI (online technology).

9.   The Executive Director had decision making power over decision of the Lottery, including marketing.

10.  As the Deputy Executive director, Cook and Executive Director Kline met on an as needed basis and did not have regularly-scheduled meetings

11.  In mid 1997, the Executive Director of the Pennsylvania Lottery, Chuck Kline, resigned from that position.   Dan Cook was the Deputy Executive Director of the Lottery under Kline and was made Acting Executive Director upon Kline's resignation.

12.  In 1996, Robin Costenbader-Jacobson ran for State Representative for the Republican party in Berks County but was defeated.

13.  Following her unsuccessful bid for public office,

Costenbader-Jacobson submitted an application for non-civil
service employment to the Ridge administration.

14.   The candidates were interviewed by Secretary Judge and
Deputy Secretary Drew.  It was determined that the Lottery could
use an individual with a marketing background which Costenbader-
Jacobson had, and ultimately, it was decided that Dan Cook would
assume the permanent position of Executive Director and
Costenbader-Jacobson would become the Deputy Executive director.

15.   Secretary Judge made the final recommendation to the
Ridge administration to hire Robin Costenbader-Jacobson as Deputy
Executive Director of the Pennsylvania Lottery.

16.   Dan Cook had no role in hiring Costenbader-Jacobson for
the position of Deputy Executive director.  Secretary Judge
informed Cook that Costenbader-Jacobson was being appointed to
the position.

17.   Costenbader-Jocobson began as the Deputy Executive
Director of the Lottery on December 1, 1997.

18.   Costenbader-Jacobson knew that the position she was
taking was a Senior Management Service position.

19.   Costenbader-Jacobson was informed that the position she
was taking was to serve at the pleasure of the Secretary of
Revenue.

20.   Costenbader-Jacobson was informed that the position she
was taking was not subject to a collective bargaining agreement.

21.   Costenbader-Jacobson was informed that the position she
was taking was not covered by unemployment compensation.

22.   On December 1, 1997, Cook gave Costenbader-Jacobson an

overview of the organization and encouraged her to become familiar with the Lottery organization and operations.

24.   One area of responsibility Cook told Costenbader-Jacobson her wanted her involved in was the on-line gaming transition project to the new AWI contract.

25.   In December 1997, the Lottery had two incidents occur which included the announcer reading a wrong number on a daily number drawing and a second incident in which the television studio broadcast a security test drawing rather than the actual drawing on one night.

26.   The Lottery had weekly staff meetings every Tuesday during which marketing, public relations, administration and security matters were discussed.

27.   Cook made Costenbader-Jacobson aware that the Lottery had to be very careful about its image in that it was not to be seen as promoting gambling.  She also became aware that a Congressional committee was examining state-run lotteries.

29.   During her first month of working for the Lottery, Costenbader-Jacobson noticed that during meetings, Cook would often cut people off when they attempted to speak.  She stated, "there didn't seem to be room for other individuals in the room, the environment, to have a lot of discussion or to make changes."

30.   Costenbader-Jacobson indicated that "people felt uncomfortable to come out with ideas that were not in sync or along the same vein that [Cook] was going in.

31.   On January 8, 1998, Cook repeated a joke of a sexual nature in the presence of Costenbader-Jacobson.

32.  Cook never engaged in sexual flirtations with Costenbader-Jacobson or made sexual advances toward her.

33.  Cook never propositioned Costenbader-Jacobson sexually.

34.  In late February 1998, the Lottery had a WildCard Lotto winner from Lehigh County.  The State Representative from that area indicated that he wanted to be notified of the check presentation and wanted to be present with his constituent for the event. The representative was not present at the check presentation but Costenbader-Jacobson was.

35.  Cook went on a vacation and when he returned, learned that the check presentation had been made and that the Representative had not been notified of it.

36.  On March 2, 1998, Cook asked Costenbader-Jacobson to come to his office.  Cook attempted to speak to Costenbader-Jacobson about the matter and eventually became agitated in his conversation with her.

37.  During the course of the meeting, both individuals' voices became raised.  Costenbader-Jacobson then got up and left Cook's office and went to her office with Cook following her and continuing the conversation.  Costenbader-Jacobson then left her office and left the executive office area.

38.  Costenbader-Jacobson has heard Cook raise his voice and yell at other people.

39.  About this same time period, Cook had received a telephone call from Secretary Judge about a radio commercial which had aired and which Costenbader-Jacobson had changed from

the original approved version.  The Secretary thought the
commercial promoted greed by repeating the words "cash, cash,
cash" for nearly the entire commercial, and was very upset over
it.

40.  The Pennsylvania Lottery along with other state
lotteries were under federal scrutiny of their advertising of
gambling.

41.  On or about March 5, 1998, as a result of Costenbader-
Jacobson asking for a meeting with the Secretary, Judge and Drew
met with Costenbader-Jacobson.  During the meeting, she
complained about Dan Cook, including the one joke which Cook told
on January 8, 1998, and a comment about an employee's physical
condition, and her perception that she was not being invited to
meetings by Cook.

42.  Secretary Judge had regularly-scheduled meetings
concerning the Lottery.

43.  During a March meeting, Secretary Judge indicated
to Cook that the joke was not appropriate and stressed that
Costenbader-Jacobson and Cook had to work together for the
Lottery to succeed.

44.  Prior to meeting with Costenbader-Jacobson, and because
Cook and Costenbader-Jacobson were Senior Management Service
officials appointed with the approval of the Governor, Drew and
Personnel Director Greecher had a discussion with Charles
Sciotto, Deputy Secretary for Administration for the Ridge
Administration about the matter.

46.  Another matter discussed at the March 5, 1998 meeting

was a Lottery commercial which Costenbader-Jacobson approved in Cooks absence, which repeated the words "cash, cash, cash " for about sixty seconds.  Cook previously approved a different commercial but Costenbader-Jacobson approved a change to the commercial.

47.  Cook had told Costenbader-Jacobson that he thought the commercial represented greed and she thought he was blaming her for it.

48.  Costenbader-Jacobson stated to the Secretary during the March 5, 1998 meeting with Secretary Judge that Dan Cook must spell "lottery" with an "I", meaning that he acted as though everything revolved around him and how it would affect him as the Executive Director of the Lottery.  She said he did not seem concerned with the welfare of the organization as much as how he would be perceived.

49.  Also during the March 5, 1998 meeting with the Secretary, Costenbader-Jacobson complained about Cook screaming and swearing during a meeting with a vendor during which he hit his hand on the table and used the phase "goddammit."

47.  Costenbader-Jacobson also complained to the Secretary of Cook's "character assassinations of other employees".

48.  Costenbader-Jacobson and Cook met again with the Secretary on May 27, 1998.

49.  On July 1, 1998, Costenbader-Jacobson sent a letter to Secretary Judge with a variety of complaints about Dan Cook going all the way back to her first week of work in December and which had already been discussed in prior meetings.

50.  Secretary Judge referred the July 1, 1998 letter and the matters referred therein to Revenue Deputy Secretary of Administration Drew who oversee's the Personnel Division to handle.

51.  Costenbader-Jacobson was out of the office on July 1, 1998 when she sent the letter and returned to her office at the Lottery on July 16, 1998.

57.  On July 16th, Deputy Secretary Drew, Personnel Analyst Linda Miller, Cook and Costenbader-Jacobson met and discussed the problems existing at Lottery between Cook and Costenbader-Jacobson for approximately three hours.

58.  Secretary Judge had a meeting with Deputy Secretary Drew, Personnel analyst Linda Miller and Director of Personnel John Greecher to discuss the situation existing at Lottery involving Cook and Costenbader-Jacobson.

59.  Secretary Judge had a meeting with both Cook and Costenbader-Jacobson on July 23, 1998 and told them that they needed to work together, that whatever happened in the past with them was history and that they had a fresh start to work together.  Secretary Judge explained that the number one priority was the performance of the Lottery and that he believed their relationship was hurting the operational activities of the Lottery within the rank and file employees.  He also indicated that the operational difficulties at Lottery had reached the Governor's Office and he was compelled to do something about it.

62.  Secretary Judge told Cook and Costenbader-Jacobson that they were both his appointments and that they would lose their

jobs before he lost his.

63.  After the July 23, 1998 meeting, Costenbader-Jacobson worked on getting the licensing function of the Lottery updated and back in order, which had been an assignment given to her by Cook.  She also worked on the Lottery website, attended various meetings including for an on-line gaming vendor transition project and with Scientific Games, another vendor with whom the Lottery did business, and organized various events for the lottery.

64.  Costenbader-Jacobson also continued to attend various conferences and training seminars on behalf of the Lottery as approved by Executive Director Cook.  In January 1998, Costenbader-Jacobson was sent to two 6 hours seminars concerning new Department of Revenue employees and labor relations issues. On May 4, 1998, she attended a four day Marketing Forum on the Quenn Elizabeth II cruise.  On May 10, 1998, Cook authorized her to go to another three or four day Lottery symposium in Maryland. On June 3, 1998, she attended a 3 day management seminar in Harrisburg.  On July 10, 1998, Costenbader Jacobson was sent by Cook to a Forum for Management sponsored by the Public Gambling Research Institute in Colorado for several days; In October 1998, she went to a three day seminar in Arizona concerning lottery business and on November 12, 1998, attended a Lottery Strategic Alliance seminar in Maryland.

65.  Following the meeting with Secretary Judge, Costenbader Jacobson continued to attend the weekly, Tuesday Lottery meetings when she was in the office, attended creative meetings with the

Lottery's advertising agency, attended I-team area managers meetings, and attended meetings with the Lottery's on-line gaming vendor. There were occasions in which she observed other persons attending meetings with Cook that she was not invited to.

66. After the July 23, 1998 meeting with Secretary Judge, Costenbader-Jacobson never complained to Secretary Judge about any problems she was experiencing with Dan Cook.

67. Costenbader-Jacobson filed a complaint with the Pennsylvania Human Relations Commission concerning Dan Cook. The complaint was served on the Department of Revenue on December 10, 1998.

68. Prior to terminating Costenbader-Jacobson's employment, Secretary Judge was aware that she had filed a complaint against the Department of Revenue with the Pennsylvania Human Relations Commission.

69. Judge informed the Governor's Office of Administration and the Governor's Deputy Chief of Staff of his recommendation to terminate Costenbader-Jacobson's employment and received permission to terminate her from the Governor's Office and from the Secretary of Administration.

76. Deputy Secretary Drew and Director of Personnel Greecher delivered a letter of termination to Costenbader-Jacobson on February 11, 1999.

77. On the same day Costenbader-Jacobson was terminated, Cook received a letter from Secretary Judge indicating that the Secretary was "extremely concerned with the management and ineffective direction of activities of the Pennsylvania State

Lottery" and outlining steps the Secretary was taking to intervene.

78.   Since her termination, Costenbader-Jacobson has represented in letters to prospective employers that "as the deputy director of the Pennsylvania Lottery, a 1.7 billion dollar program of the Commonwealth, I was hired to coordinate the operations of the marketing function with an 18 million dollar budget.  During my tenure as the executive of marketing, the organization was awarded six national awards by the industry, the top two awards in best tv ad and best radio ad for game shows."

# COSTENBADER-JACOBSON WITNESS LIST
## CURRENT EMPLOYEES

| NAME | ADDRESS | POSITION | PHONE NUMBER |
|---|---|---|---|
| Deborah Butler | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Administrative Assistant | (717) 986-4760 |
| Barry Drew | Department of Revenue Executive Offices 1121 Strawberry Square Harrisburg, PA   17128-1100 | Deputy Secretary for Administration | (717) 783-3691 |
| Linda Miller | Department of Revenue Bureau of Human Resources 1121 Strawberry Square Harrisburg, PA   17128-1100 | Chief, Employee Services Division | (717) 787-3517 |
| Wayne Parsons | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Administrative Officer 4 | (717) 986-4741 |
| William Powell | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Revenue Research Analyst 3 | (717) 986-4650 |
| Jullia Sheridan | Department of Revenue Office of Chief Counsel 1121 Strawberry Square Harrisburg, PA   17128-1100 | Deputy Chief Counsel | (717) 787-1382, Ext. 3046 |
| Ray Straub | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Administrative Officer 4 | (717) 986-4771 |
| Cheryl Swain | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Clerk Typist 3 | (717) 986-4763 |
| Edward Trees | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Deputy Exec. Dir. for Marketing & Games | (717) 986-4762 |
| Judy Tyler | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Chief of Instant Games Control | (717) 986-4720 |
| Bill Waddington | Department of Revenue Bureau of Penna. State Lottery 2850 Turnpike Industrial Drive Middletown, PA   17057-5491 | Administrative Officer 3 | (717) 986-4686 |

## COSTENBADER-JACOBSON WITNESS LIST
## RETIRED EMPLOYEES

| NAME | ADDRESS | PHONE NUMBER |
|------|---------|--------------|
| Ed Bell | 56 East Sedgewick Street<br>Philadelphia, PA   19119 | (215) 849-8049 |
| Daniel Cook | 636 Easton Road<br>Riegelsville, PA  18077 | (610) 749-2027 |
| John Greecher | 5265 Deerfield Avenue<br>Mechanicsburg, PA   17050 | (717) 761-3624 |
| Robert Herb | R. D. #2, Box 487<br>503 North 6th Street<br>Shamokin, PA   17872 | (570) 648-2123 |
| Robert A. Judge, Sr. | 25 Twin Creeks Drive<br>Thornton, PA   19373 | (610) 361-9797 |
| Charles Kline | 55 West Lauer Lane<br>Camp Hill, PA   17011 | (717) 731-8288 |
| Deb Snyder | 201 East Pomfret Street<br>Carlisle, PA   17013 | (717) 258-1610 |
| Albert Taylor | 1675 Wyntre Brooke North<br>York, PA   17403 | (717) 741-3601 |

## COSTENBADER-JACOBSON WITNESS LIST
## NON-REVENUE EMPLOYEES

| | | | |
|------|---------|---------|---------|
| Connie Bloss | Tierney Communications<br>200 South Broad Street<br>Philadelphia, PA   19102 | Vice President,<br> Management Director | (215) 790-4175 |
| John Contino | Commonwealth of Pennsylvania<br>State Ethics Commission<br>Room 309, Finance Building<br>P. O. Box 11470<br>Harrisburg, PA   17108-1470 | Executive Director | (717) 783-1610 |

## CLERK'S EXHIBIT LISTING

**Abbreviated Name of Case:**   Costenbader-Jacobson v. PA Dept of Revenue, et. al

**Case No.**   No. CV-00-1269

**Name of Party submitting this list:** Defendants

| Exhibit No. | Description of Object or Item | Document Dated | Identified in Court | Date Admitted | Witness on Stand |
|---|---|---|---|---|---|
| 1 | Sexual Harassment Policy | 1/30/98 | | | |
| 2 | Ethics Commission Report | 5/2/02 | | | |
| 3 | Organization Chart | | | | |
| 4 | Status Report | | | | |
| 5 | Memo Re Meeting w/ Cook and Jacobson | 7/20/98 | | | |
| 6 | Memo to Paese from Judge Recommending Termination | 2/2/99 | | | |
| 7 | Termination Letter | 2/11/99 | | | |
| 8 | Costenbader-Jacobson's Resume | | | | |
| 9 | Greecher's Memo Termination | 2/11/99 | | | |
| 10 | Permanent Record of Training | | | | |
| 11 | Memo to file from Robin Re Licensing and Enforcement Officer | 4/7/98 | | | |
| 12 | Memo to Cook from Robin Re Support Staff | 5/18/98 | | | |

| | | | | |
|---|---|---|---|---|
| 13 | Memo to Robin from Cook | 5/26/98 | | |
| 14 | Memo to Meehan from Robin | 7/19/98 | | |
| 15 | Memo to Drew from Robin | 7/79/98 | | |
| 16 | Email to Cook from Robin | 7/1/98 | | |
| 17 | Memo to Swain from Robin Re counseling | 7/8/98 | | |
| 18 | Robin's 1998 Travel | | | |
| 19 | Robin's Personal Journal (Handwritten) | 12/97-2/13/98 | | |
| 20 | Robin's Log | 12/97-1/99 | | |
| 21 | Robin's Calendar | 11/97-12/98 | | |
| 22 | Notes from Mtgs Robin Attended | | | |
| 23 | "Mtgs Excluded from By Cook" | | | |
| 24 | Marketing Initiatives Distribution List | 11/23/98 | | |
| 25 | Disciplinary ltr to Cook from Judge | 2/11/99 | | |
| 26 | Job application letter | 8/11/99 | | |
| 27 | Memo to Judge from Robin | 7/1/98 | | |
| 28 | Deposition Transcript of Costenbader-Jacobson | | | |
| 29 | Deposition Transcript of Sally Darryluk | | | |
| 30 | Deposition Transcript of Deb Butler | | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBIN COSTENBADER-JACOBSON,     :
            :
       **Plaintiff**            :
            :
       v.            : No. CV-00-1269
            :
COMMONWEALTH OF PENNSYLVANIA,  : (Judge Kane)
DEPARTMENT OF REVENUE,       :
PENNSYLVANIA LOTTERY;        :
ROBERT A. JUDGE, SR.;         :
DANIEL L. COOK,             :
            :
       **Defendants**

## DEFENDANTS' PROPOSED SPECIAL VERDICT QUESTIONS

<u>Daniel Cook</u>

First Amendment Retaliation Claim

1.  Do you find that Daniel Cook took adverse
    employment action against Robin Costenbader-
    Jacobson?

    Yes  _____

    No   _____


If you answered "yes" to question Number 1, go on to
Question Number 2.

If you answered "no" to question Number 1, go to
question Number 8.

2.   If you found that Daniel Cook took adverse
     employment action against Robin Costenbader-
     Jacobson, do you find he did so in order to
     retaliate against her for reporting her claim of
     sexual harassment?

     Yes  _____

     No   _____


If you answered "yes" to question Number 2, go on to
Question Number 3.

If you answered "no" to question Number 2, go to
question Number 5.


3.   If you answered "yes" to question Number 2, do you
also find that Cook would have taken the same action
even if Costenbader-Jacobson had not reported her
claim of sexual harassment?

     Yes  _____

     No   _____


If you answered "yes" to question Number 3, go on to
Question Number 5.

If you answered "no" to question Number 3, go to
question Number 4.

4.   If you find that Daniel Cook took adverse
     employment action against Costenbader-Jacobson in
     retaliation for reporting her claim of sexual
     harassment and that he would not have taken the
     same adverse action but for her allegation of
     sexual harassment, indicate the amount that
     Costenbader-Jacobson has proven would fairly
     compensate her for her losses from Daniel Cook.

     $ _____

     Go to question 5.

Equal Protection Claim

5.   Do you find that Daniel Cook intentionally treated
     Costenbader-Jacobson differently than similarly
     situated males and that she suffered an adverse
     employment action as a result?

     Yes _____

     No  _____


If you answered "yes" to question Number 5, go on to
Question Number 6.

If you answered "no" to question Number 5, go to
question Number 8.

6.  If you answered "yes" to question Number 5, do you
also find that Cook would have taken the same action
even if Costenbader-Jacobson was not a woman?

     Yes _____

     No  _____

If you answered "yes" to question Number 6, go on to Question Number 8.

If you answered "no" to question Number 6, go to question Number 7.

7.  If you find that Daniel Cook intentionally took adverse employment action against Costenbader-Jacobson because she is a female and treated similarly situated males more favorably, indicate the amount that Costenbader-Jacobson has proven would fairly compensate her for her losses from Daniel Cook.

   $ _____

<u>Robert Judge</u>

First Amendment Retaliation Claim

8.  Do you find that Robert Judge took adverse employment action against Robin Costenbader-Jacobson?

   Yes _____

   No  _____

If you answered "yes" to question Number 8, go on to Question Number 9.

If you answered "no" to question Number 9, sign the last page of these special verdict questions and return to the courtroom.

9.   If you found that Robert Judge took adverse
     employment action against Robin Costenbader-
     Jacobson, do you find he did so in order retaliate
     against her for reporting her claim of sexual
     harassment?

     Yes _____

     No  _____


If you answered "yes" to question Number 9, go on to
Question Number 10.

If you answered "no" to question Number 9, go to
question Number 12.


10. If you answered "yes" to question Number 9, do you
also find that Judge would have taken the same action
even if Costenbader-Jacobson had not reported her
claim of sexual harassment?

     Yes _____

     No  _____


If you answered "yes" to question Number 10, go on to
Question Number 12.

If you answered "no" to question Number 10, go to
question Number 11.


11. If you find that Robert Judge took adverse
     employment action against Costenbader-Jacobson in

retaliation for reporting her claim of sexual harassment and that he would not have taken the same adverse action but for her allegation of sexual harassment, indicate the amount that Costenbader-Jacobson has proven would fairly compensate her for her losses from Robert Judge.

$ _____

Go to question 12.

Equal Protection Claim

12. Do you find that Robert Judge intentionally treated Costenbader-Jacobson differently than similarly situated males and that she suffered an adverse employment action as a result?

Yes _____

No _____

If you answered "yes" to question Number 12, go on to Question Number 13.

If you answered "no" to question Number 12, sign the last page of these special verdict questions and return to the courtroom.

13. If you answered "yes" to question Number 12, do you also find that Judge would have taken the same action even if Costenbader-Jacobson was not a woman?

Yes _____

No _____

If you answered "yes" to question Number 13, sign the last page of these special verdict questions and return to the courtroom.

If you answered "no" to question Number 13, go to question Number 14.

14. If you find that Robert Judge intentionally took adverse employment action against Costenbader-Jacobson because she is a female and treated similarly situated males more favorably, indicate the amount that Costenbader Jacobson has proven would fairly compensate her for her losses from Robert Judge.

$ _____

The foreperson should sign these Special Verdict Questions and return to the Courtroom.

_____          _____

**DATE**                          **FOREPERSON**